UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No.  5:25-cv-02808-MWC-MAR                                      Date: October 28, 2025

Title:  Richard Emilio Flores-Amaut v. Pamela Bondi *et al.*

Present: The Honorable Michelle Williams Court, United States District Judge

| T. Jackson | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings:  (IN CHAMBERS) Order GRANTING IN PART and DENYING IN PART Petitioners'** *Ex Parte* **Application for Temporary Restraining Order (Dkt. 2)**

Before the Court is Petitioners Richard Flores-Amaut and Rodrigo Flores-Roa's (collectively, "Petitioners") *ex parte* application ("Application") for a temporary restraining order ("TRO").  *See* Dkt. # 2 ("*TRO App.*").  They ask the Court for one of two forms of relief: (1) an order requiring Respondents[1] to immediately release Petitioners on an order of their own recognizance and enjoining Respondents from re-detaining Petitioners absent an order from this Court, or (2) an order requiring Respondents to immediately release Petitioners from custody and enjoining Respondents from re-detaining Petitioners unless they demonstrate at a bond hearing, by clear and convincing evidence, that Petitioners are a flight risk or danger to the community such that detention is necessary.  *Id.* 2.  Respondents did not file an opposition.[2]  For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** the Application.

---

[1] Collectively, Respondents are Pamela Bondi, Kristi Noem, the U.S. Department of Homeland Security, Todd M. Lyons, Fereti Semaia, and Ernesto Santacruz, Jr.  Pamela Bondi is the Attorney General of the United States; Kristi Noem is the Secretary of the U.S. Department of Homeland Security ("DHS"); Todd M. Lyons is the Acting Director of U.S. Immigration and Customs Enforcement ("ICE"); Ernesto Santacruz, Jr. is the Field Office Director of Enforcement and Removal Operations at the Adelanto Field Office for ICE; and Fereti Semaia is the Warden of the Adelanto Detention Facility.

[2] Nowhere does Petitioner's counsel represent that she complied with Local Rule 7-19 to notify Respondents of the *ex parte* application.  Still, because the interests of justice require the Court to rule on the Application in a timely fashion, it will do so.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No.  5:25-cv-02808-MWC-MAR                              Date: October 28, 2025

Title:      Richard Emilio Flores-Amaut v. Pamela Bondi *et al.*

I.     Background

Petitioners are a father and son who entered the United States alongside the other two members of their family, Elizabeth Roa-Anton and Caleb Flores-Roa, without inspection on approximately May 18, 2022.  *See* Dkt. # 2-3 ("*Robinson Decl.*") ¶ 4.  Petitioners fled Peru due to threats stemming from Mr. Flores-Amaut's work as a correctional officer.  *Id.* ¶ 5.  They were released from ICE custody on an Order of Release on Recognizance on the same day under 8 U.S.C. § 1226 after ICE determined that they were not a flight risk or a danger to the community.  *Id.* ¶ 4; *App.* 3.  Since then, Petitioners have complied with the terms of their release.  *Robinson Decl.* ¶ 4.

DHS filed a Notice to Appear in North Los Angeles Immigration Court to commence removal proceedings against Petitioners' entire family.  *Id.* ¶ 6.  At their merits hearing on April 11, 2023, an Immigration Judge denied their applications for asylum, withholding of removal, and protection under the convention Against Torture.  *Id.*  The Board of Immigration Appeals ("BIA") affirmed on January 17, 2024, after which Petitioners filed a Petition for Review in the Ninth Circuit Court of Appeals on February 16, 2024.  *Id.*  While the appeal is pending, ICE has placed the family under an Order of Supervision, which imposes more stringent reporting requirements and travel restrictions.  *Id.* ¶ 7.  Petitioners aver that they complied with all requirements during this period, and Mr. Flores-Amaut worked steadily to support the family.  *Id.*

When appearing for a routine ICE check-in at the Los Angeles Field Office on September 26, 2025, ICE detained all four family members without notice or explanation.  *Robinson Decl.* ¶ 8.  The Ninth Circuit issued an emergency stay of removal the same day, which prohibits ICE from deporting the family while the appeal remains pending.  *Id.* ¶ 9.  The timeline for disposition of their appeal to the Ninth Circuit is unknown.  *App.* 5.  Petitioners contend that they are unable to request bond due to their pending appeals.  *Id.* 9.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 5:25-cv-02808-MWC-MAR | Date: October 28, 2025 |
| Title: Richard Emilio Flores-Amaut v. Pamela Bondi *et al.* | |

II. <u>Legal Standard</u>

    A.    <u>*Ex Parte* Applications</u>

"Circumstances justifying the issuance of an ex parte order are extremely limited." *Reno v. Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (quoting *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 438–39 (1974)). "Consistent with [the Supreme Court's] overriding concern, courts have recognized very few circumstances justifying the issuance of an ex parte TRO." *Id.* (discussing parties' failure to provide notice under Fed. R. Civ. P. 65(b)).

In this District, *ex parte* applications are solely for extraordinary relief and are rarely justified. *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995). A party filing an *ex parte* application must support its request for emergency relief with "evidence . . . that the moving party's case will be irreparably prejudiced if the underlying motion is heard according to regularly noticed motion procedures," and a showing "that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Id.* at 492. "Ex parte applications are not intended to save the day for parties who have failed to present requests when they should have." *Id.* at 493 (internal quotation marks omitted).

    B.    <u>Temporary Restraining Orders</u>

Federal Rule of Civil Procedure ("Rule") 65 grants district courts the power to issue injunctions and restraining orders. Issuance of a TRO, as a form of preliminary injunctive relief, is an extraordinary remedy, and the applicant for such a remedy bears the burden of proving its propriety. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). In general, the showing required for a TRO and a preliminary injunction are the same. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). The applicant for a TRO must show that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm absent the injunction; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 5, 20 (2008); *Meinecke v. City of Seattle*, 99 F.4th 514, 521 (9th Cir. 2024). "In the Ninth Circuit, a plaintiff may also prove a TRO is warranted by raising 'serious questions going to the merits.'" *NML Cap., Ltd. v. Spaceport Sys. Int'l, L.P.*, 788 F. Supp. 2d 1111, 1125 (C.D. Cal. 2011) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   5:25-cv-02808-MWC-MAR					Date: October 28, 2025

Title:     Richard Emilio Flores-Amaut v. Pamela Bondi *et al.*

1127, 1132 (9th Cir. 2011)).  Where the non-movant is a government entity, "the third and fourth [*Winter*] factors . . . merge." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 695 (9th Cir. 2023) (en banc).

III.    Discussion

   A.    *Ex Parte* Application and *Mission Power* Factors

The Court finds that Petitioners have satisfied the *Mission Power* factors. Petitioners have been in custody for several weeks, meaning that they have been unable to work and have not received any process to advocate for their release.  If the Court heard the Application according to regularly noticed motion procedures, that would leave Petitioners detained without access to any due process for at least an additional 28 days. Because this delay would leave their family without income, and given the poor conditions characteristic of ICE detention, the Court finds that *ex parte* relief is warranted.  *See Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017) (identifying "the subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to children of detainees who parents are detained.").

   B.    Request for Release

      i.    *Likelihood of Success on the Merits*

         a.    *Procedural Due Process*

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law."  U.S. CONST. amend. V.  That interest is particularly weighty when government detention is at issue.  *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." ).  Being held in custody by the government at an earlier time does not eliminate one's liberty interest in remaining on release, since courts have repeatedly recognized that conditional release from physical restraint gives rise to a protected liberty interest.  *See generally Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (finding a parolee had an interest in his continued

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 5:25-cv-02808-MWC-MAR   Date: October 28, 2025

Title: Richard Emilio Flores-Amaut v. Pamela Bondi *et al.*

liberty); *Young v. Harper*, 520 U.S. 143, 150–53 (1997) (applying *Morrissey* pre-parole). "[E]ven when an initial decision to detain or release an individual is discretionary, the government's subsequent release of the individual from custody creates 'an implicit promise' that the individual's liberty will be revoked only if they fail to abide by the conditions of their release." *Calderon v. Kaiser*, No. 25-cv-06695-AMO, 2025 WL 2430609, at *2 (N.D. Cal. Aug. 22, 2025) (quoting *Morrissey*, 408 U.S. at 482).

These due process rights apply to noncitizens residing in the United States. The Supreme Court has firmly established that "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (citation omitted)). Once a noncitizen is present in the United States, they have a "weighty" liberty interest in remaining in the United States, as they stand to lose rights to "stay and live and work" in the country and "to rejoin [their] immediate family." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982) (citation omitted). That weighty liberty interest remains "regardless of how someone entered the country: '[O]nce passed through our gates, even illegally,' noncitizens 'may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law.'" *Make the Rd. N.Y. v. Noem*, No. 25-cv-190 (JMC), 2025 WL 2494908, at *10 (D.D.C. Aug. 29, 2025) (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953)).

Accordingly, as numerous courts have held, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody. *See Romero v. Kaiser*, No. 22-cv-02508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022); *see also Jorge M.F. v. Wilkinson*, No. 21-cv-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. March 1, 2021) (holding that a Mexican citizen with pending removal proceedings who had been released on bond had "a substantial private interest in remaining on bond" (citation omitted)).

1. *Applicability of Mathews v. Eldrige*

After determining that due process applies, the outstanding question is "what process is due." *Morrissey*, 408 U.S. at 481. "The constitution typically 'requires some kind of a hearing before the State deprives a person of liberty or property,'" particularly

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:25-cv-02808-MWC-MAR                                                    Date: October 28, 2025

Title:     Richard Emilio Flores-Amaut v. Pamela Bondi *et al.*

because the loss of liberty "cannot be fully compensated after the fact." *Salcedo Aceros v. Kaiser*, No. 25-cv-06924-EMC (EMC), 2025 WL 2637503, at *5 (N.D. Cal. Sept. 12, 2025) (quoting *Zinermon v. Burch*, 494 U.S. 113, 127 (1990)).  When determining what procedures are required by due process, courts apply the three-part test of *Mathews v. Eldridge*, 424 U.S. 319 (1976).  Under *Mathews*, courts must consider three factors: (1) "the private interest" at stake; (2) "the risk of an erroneous deprivation" without additional procedures and "the probable value . . . of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens imposed by the additional procedures." 424 U.S. at 335.

2.  *Private Interest at Stake*

Petitioners gained a liberty interest in their continued freedom when DHS elected to release them on their own recognizance under 8 U.S.C. § 1226, which implied a promise that they would not be re-detained so long as they abided by the terms of their release. *See Salcedo Aceros*, 2025 WL 2637503, at *7; *Valencia Zapata v. Kaiser*, No. 25-cv-07492-RFL, 2025 WL 2741654, at *8 (N.D. Cal. Sept. 26, 2025).  Under federal regulations, DHS's decisions to release Petitioners necessarily involved a determination that each Petitioner was not a danger to the community nor a flight risk. *See* 8 C.F.R. § 1236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in section 236(c)(1) of the Act, under the conditions at section 236(a)(2) and (3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."). The Court has no indication that circumstances have since changed.  Having met the conditions imposed by the government upon their release, Petitioners have a liberty interest in their continued freedom. *See Valencia Zapata*, 2025 WL 2741654, at *8.  The government's decision to release Petitioners for years following their initial detention gave them a protected interest in their continued liberty. *Calderon*, 2025 WL 2430609, at *3; *Doe v. Becerra*, No. 2:25-cv-00647-DJC-DMC, 2025 WL 691664, at *5 (E.D. Cal. Mar. 3, 2025).  Respondents "cannot now about-face and extinguish these liberty interests by pursuing mandatory detention against Petitioners." *Valencia Zapata*, 2025 WL 2741654, at *9.

In similar proceedings, Respondents have taken the position that 8 U.S.C. § 1225 governs rather than 8 U.S.C. § 1226 even though Petitioners have already been in the country for several years. *See, e.g.*, *Matter of Jonathan Javier Yajure Hurtado*, 29 I&N

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.   5:25-cv-02808-MWC-MAR | Date: October 28, 2025 |
| Title:     Richard Emilio Flores-Amaut v. Pamela Bondi *et al.* | |

Dec. 216 (BIA 2025); *Valencia Zapata*, 2025 WL 2741654, at *8–10. This Court has rejected such an argument on several occasions already. *See, e.g.*, *R.S. v. Santacruz*, No. 5:25-cv-02594-MWC-SK, Dkt. # 7, 4–6; *Ortiz v. Lyons*, No. 2:25-cv-09831-MWC-KES, Dkt. # 7, 4–6. The same is true of many other district courts. *See, e.g.*, *Valencia Zapata*, 2025 WL 2741654, at *8–10; *Rodriguez v. Bostock*, No. 3:25-cv-05240-TMC, 2025 WL 2782499, at *1–3 ("Every district court to address this question has concluded that the government's position belies the statutory text of the INA, canons of statutory interpretation, legislative history, and longstanding agency practice."). The Court reaches the same conclusion as in previous cases—8 U.S.C. § 1226(a) controls, not § 1225. As such, the Court finds that Respondents' detention of Petitioners was discretionary, not mandatory.

Accordingly, the Court finds that Petitioners have a significant private interest in their continued liberty, and thus the first *Mathews* factor favors Petitioners.

### 3.     *Risk of Erroneous Deprivation*

The Court concludes that the second *Mathews* factor also favors Petitioners. Civil immigration detention must be "nonpunitive in purpose" and bear a "reasonable relation" to the authorized statutory purposes of preventing flight and danger to the community. *Zadvydas*, 533 U.S. at 690 (citation omitted). As described above, Petitioners were released on their own recognizance after their initial detention. By releasing Petitioners, immigration officers necessarily determined that they were neither flight risks nor dangers to the community. And in the intervening years, there has been no indication that Petitioners have become flight risks or dangers to the community. Absent a pre-detention hearing in front of a neutral arbiter, the risk of erroneous deprivation is high given the possibility that Petitioners' re-detention will not be pursuant to a valid state interest. *See Aviles-Mena v. Kaiser*, No. 25-cv-06783-RFL, 2025 WL 2578215, at *5 (N.D. Cal. Sept. 5, 2025).

To be sure, § 1226(a) does not require a pre-deprivation hearing, but only one post-deprivation, which an Immigration Judge can later review. *See* 8 U.S.C. § 1226(a); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022). Even though the statutory protections of § 1226(a) require only a prompt post-deprivation hearing, we conclude here that the high risk of erroneous deprivation in this case likely means that a pre-deprivation hearing is constitutionally necessary. *See Valencia Zapata*, 2025 WL 2741654, at *11. As

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:25-cv-02808-MWC-MAR                                                    Date: October 28, 2025

Title:      Richard Emilio Flores-Amaut v. Pamela Bondi *et al.*

detailed above, Respondents have recently adopted the position that noncitizens have no entitlement to a bond hearing under § 1225(b)(2) and that Immigration Judges lack jurisdiction to hold such a hearing under *Yajure Hurtado*. Moreover, Petitioners contend that they cannot receive a bond hearing while their Petition for Review is pending at the Ninth Circuit. *Robinson Decl.* ¶ 6. Accordingly, there is a high probability that Petitioners will receive no bond hearing at all. As such, the risk of erroneous deprivation of liberty is high.

### 4.      Respondents' Interest

This Court joins others in concluding that Respondents' interest in keeping Petitioners detained or re-detaining Petitioners without a pre-deprivation hearing is low "because ICE previously made the determination to release [them], and there is no evidence in the record of any changed circumstances that might cause ICE to reconsider its parole determination." *Aviles-Mena*, 2025 WL 2578215, at *6; *Valencia Zapata*, 2025 WL 2741654, at *11. Furthermore, "[i]n immigration court, custody hearings are routine and impose a 'minimal' cost." *Singh v. Andrews*, No. 25-cv-00801-KES-SKO (HC), 2025 WL 1918679, at *8 (E.D. Cal. July 11, 2025) (quoting *Becerra*, 2025 WL 691664, at *6). That Petitioners do not have criminal records and have consistently appeared for their immigration proceedings buttresses the Court's determination as to Respondents' limited interest.

Because all three *Mathews* factors favor Petitioners, we conclude that Petitioners have demonstrated, at the very least, a serious question going to the merits of their procedural due process claim.

### b.      Substantive Due Process

Petitioners have also shown a serious questions going to the merits of their substantive due process claim. As described above, freedom from government custody "lies at the heart of the liberty" protected by the Due Process Clause. *Zadvydas*, 533 U.S. at 690. For that reason, nonpunitive government detention violates the Due Process Clause unless the detention is ordered "in certain special and narrow . . . circumstances, where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id.* (citations omitted). In the context of civil immigration detention, the two "regulatory goals" of the Immigration and Nationality Act provisions

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   5:25-cv-02808-MWC-MAR                                         Date: October 28, 2025

Title:   Richard Emilio Flores-Amaut v. Pamela Bondi *et al.*

governing such detention—"ensuring the appearance of aliens at future immigration proceedings" and "preventing danger to the community"—can provide such "special justification." *Id.* (citations omitted); *see also Pinchi v. Noem*, No. 5:25-cv-05632-PCP, 2025 WL 2084921, at *5 (N.D. Cal. July 24, 2025) ("Civil immigration detention is permissible only to prevent flight or protect against danger to the community." (citing *Zadvydas*, 533 U.S. at 690)). Although "[t]he government has legitimate interests in protecting the public and in ensuring that noncitizens in removal proceedings appear for hearings," *Hernandez*, 872 F.3d at 990, "the government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions," *id.* at 994. Due process requires that "the nature and duration" of detention "bear some reasonable relation to the purpose for which the individual is" detained. *Jackson v. Indiana*, 406 U.S. 715, 738 (1972).

Petitioners were released on their own recognizance since they were neither flight risks nor dangers to the community. As such, the justifications for civil immigration detention were absent from their case. *See Valencia Zapata*, 2025 WL 2741654, at *12. They also lack criminal records and have complied with all requirements applicable to their immigration proceedings. Thus, detaining Petitioners would lack a valid basis and violate Petitioners' right to be free from impermissible government custody. *See Zadvydas*, 533 U.S. at 690; *see also Gamez Lira v. Noem*, No. 25-cv-00855-WJ-KK, 2025 WL 2581710, at *2–3 (D.N.M. Sept. 5, 2025) (finding the noncitizen petitioner was likely to succeed on a substantive due process claim in connection with his immigration detention because the evidence showed he was not a flight risk). Accordingly, Petitioners have demonstrated at least a serious question as to whether their detention would violate their substantive due process rights by failing to serve any valid purpose.

       *ii.*    *Irreparable Harm*

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). The Court finds that Petitioners would be immediately and irreparably harmed by their continued deprivation of liberty. *See Valencia Zapata*, 2025 WL 2741654, at *12; *cf. Hernandez v. Sessions*, 872 F.3d 976, 994–95 (9th Cir. 2017) (finding irreparable harm was likely to result from government's policy of not considering financial ability to pay immigration bonds); *Rodriguez v. Robbins*, 715

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:25-cv-02808-MWC-MAR	Date: October 28, 2025

Title:	Richard Emilio Flores-Amaut v. Pamela Bondi *et al.*

F.3d 1127, 1144–45 (9th Cir. 2013) (finding irreparable harm was likely to result from government's reading of immigration detention statutes as not requiring a bond hearing for noncitizens subject to prolonged detention). Accordingly, this factor weighs in favor of granting the TRO.

       *iii.*    *Balance of Equities and Public Interest*

As detailed above, the last two Winter factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). As to Respondents' interests, there is a compelling interest in the enforcement of the nation's immigration laws. *See Medina v. U.S. Dep't of Homeland Sec.*, 313 F. Supp. 3d 1237, 1252 (W.D. Wash. 2018). Still, the balance of equities and the public interest factors tip in favor of Petitioner because he is challenging a policy that is likely in violation of federal law. *See Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable or in the public's interest to allow the [government] . . . to violate the requirements of federal law.") (citations omitted); *see also Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (the government "cannot suffer harm from an injunction that merely ends an unlawful practice"). "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M.F.*, 2021 WL 783561, at *3 (cleaned up).

Even if Respondents later prove that Petitioners' detention is necessary to prevent flight or danger to the community, all Respondents face if the Court grants the TRO is a "short delay" in detaining Petitioners. *Salcedo Aceros*, 2025 WL 2637503, at *14. As such, the balance of equities tip in Petitioners' favor.

Because "there is no realistic likelihood of harm to the [Respondents] from enjoining [their] conduct," *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003), no security is needed to ensure that Respondents will be reimbursed for "costs and damages sustained by . . . hav[ing] been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Court exercises its discretion under Rule 65(c) to dispense with the filing of bond. *Jorgensen*, 320 F.3d at 919.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:25-cv-02808-MWC-MAR                                           Date: October 28, 2025

Title:       Richard Emilio Flores-Amaut v. Pamela Bondi *et al.*

C. Limitations on Re-Detention

While the Court has found that Petitioners have made the requisite showing for the Court to grant their immediate release, it cannot grant Petitioners' requested relief in full. Petitioners ask the Court to enjoin Respondents "from re-detaining them: (1) absent further order of this Court; or (2) absent the provision of a pre-deprivation hearing before a neutral arbiter, at which Respondents will bear the burden of proving by clear and convincing evidence that . . . [Petitioners have] become [a] flight risk or danger to the community." *App.* 14. For the reasons described above, the Court will enjoin Respondents from re-detaining Petitioners absent a pre-deprivation hearing. However, the Court will not impose the clear-and-convincing standard that Petitioners request, nor will it require an order from this Court to re-detain Petitioners.

Though the Ninth Circuit imposed a clear-and-convincing requirement in proceedings under § 1226(c) involving prolonged detention of noncitizens with serious criminal convictions, *see Singh v. Holder*, 638 F.3d 1196, 1205 (9th Cir. 2011), *Rodriguez Diaz v. Garland* concluded that the constitutionally required procedures for § 1226(c) do not impact the constitutionally required procedures under § 1226(a), in part because § 1226(a) involves various other statutory protections that are unavailable under § 1226(c). *Rodriguez Diaz*, 53 F.4th at 1203. Analyzing the issue directly, *Rodriguez Diaz* concluded that a clear-and-convincing standard was not constitutionally required in § 1226(a) proceedings, absent an additional factual showing indicating that such a standard was required by the circumstances of the case. *See id.* at 1213. The Ninth Circuit then denied rehearing en banc. *Rodriguez Diaz v. Garland*, 83 F.4th 1177, 1178 (9th Cir. 2023).

Though Petitioners' pre-detention hearings would not technically be proceedings under § 1226(a), the reason for requiring pre-detention hearings in this case mirrors the reason for having § 1226(a) hearings. Specifically, Petitioners are subject to discretionary, not mandatory, detention. *Compare* 8 U.S.C. § 1226(a), *with* 8 U.S.C. § 1226(c). As such, Petitioners have not shown that they are likely to succeed on their claim that the procedures applicable in the § 1226(a) discretionary detention context would violate procedural due process. *See Valencia Zapata*, 2025 WL 2741654, at *13.

Because the Court seeks to go no further than necessary to ensure that Petitioners receive the appropriate due process protections, the Court will not impose the requirement that Respondents only re-detain Petitioners subject to an order from this Court. "Courts

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   5:25-cv-02808-MWC-MAR                                         Date: October 28, 2025

Title:   Richard Emilio Flores-Amaut v. Pamela Bondi *et al.*

should act cautiously when reviewing matters entrusted to the Executive Branch, especially those involving immigration, lest it alter the balance between co-equal branches of government." *Jazi v. Rubio*, No.: 25-cv-27 BEN, 2025 WL 2420690, at *2 (S.D. Cal. Aug. 20, 2025); *see also Noem v. Vasquez Perdomo*, 606 U.S. ___, ___ S. Ct. ___, 2025 WL 2585637, at *5 (2025) (Kavanaugh, J., concurring) ("Especially in an immigration case like this one, it is also important to stress the proper role of the Judiciary . . . . [W]e . . . must decline to step outside our constitutionally assigned role to improperly *restrict* reasonable Executive branch enforcement of the immigration laws" (emphasis in original)). Moreover, because the Immigration Courts serve as the apparatus to adjudicate most day-to-day immigration matters—including by providing pre-deprivation hearings—this Court is not the appropriate forum for such a hearing. Accordingly, the Court finds only that Petitioners must receive a pre-deprivation hearing before Respondents can re-detain them.

IV.   Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Petitioners' *ex parte* application for a temporary restraining order. The Court **ORDERS** Respondents to effectuate Petitioners' immediate release. Furthermore, the Court **ENJOINS** Respondents from re-detaining Petitioners absent a pre-deprivation hearing. A preliminary injunction hearing is set for **November 7, 2025**, at 1:30 p.m. in Courtroom 6A. Petitioners shall file their opening brief and all related submissions no later than 12 p.m. on October 31, 2025. Respondents shall file their opposition no later than 12 p.m. on November 5, 2025. Petitioners shall file their reply brief no later than end of day on November 6, 2025.

**IT IS SO ORDERED.**

:

**Initials of Preparer**   TJ